ACCEPTED
06-14-00101-CV
SIXTH COURT OF APPEALS
TEXARKANA, TEXAS
5/6/2015 11:14:02 PM
DEBBIE AUTREY
CLERK

**CASE NO. 06-14-00101-CV**

FILED IN
6th COURT OF APPEALS
TEXARKANA, TEXAS
5/7/2015 8:27:00 AM
DEBBIE AUTREY
Clerk

IN THE COURT OF APPEALS FOR THE SIXTH APPELLATE DISTRICT OF TEXAS AT TEXARKANA, TEXAS

**IN THE MATTER OF THE MARRIAGE OF**

**EMMA RUTH VINSON AND BEN ANDREW VINSON**

**BEN ANDREW VINSON, RESPONDENT/APPELLANT**

**EMMA RUTH VINSON, PETITIONER/APPELLEE**

Appeal from the County Court at Law

Rusk County, Texas

Cause No. 2011-12-590CCL

The Hon. Robin Sage, Sitting by Assignment, Presiding

JOE SHUMATE
State Bar No. 18327500
James J. Rosenthal
State Bar No. 24088801
107 North Main Street
P. O. Box 1915
Henderson, Texas 75653-1915
Tel: (903) 657-1416
Fax: (903) 655-8211
Attorney for Appellant, Andrew Ben Vinson

## CERTIFICATE OF INTERESTED PARTIES

The undersigned counsel of record for Appellant certifies that the following listed persons have an interest in the outcome of this case. These representations are made so that this Court may evaluate possible disqualifications or recusal.

### APPELLANT

Andrew Ben Vinson, Appellant

Joe Shumate, Lead Attorney for Appellant at trial and on appeal.
James J. Rosenthal, Briefing Attorney for Appellant on appeal.
107 N. Main St.
P. O. Box 1915
Henderson, Texas 75653

### APPELLEE

Emma Ruth Vinson, Appellee

Beau T. Sinclair, Attorney for Appellee on appeal.
SBOT NO. 24029835
400 S. Broadway Ave.
Suite 102
Tyler, TX 75702

Robert Foster, Attorney for Appellee at trial.
SBOT NO. 07295200
227 E. Tyler Street
Longview, TX 75601

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PARTIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

TABLE OF CONTENTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

INDEX OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

PREAMBLE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vii

STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STANDARD OF REVIEW. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ISSUES PRESENTED. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

SUMMARY OF THE ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

ARGUMENT AND AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

POINT OF ERROR NO. 1.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

> The trial court abused its discretion in failing to confirm the interest and accumulations upon Appellant's separate property interest in Appellant's Texas Bank 401k Plan as Appellant's separate property, and partitioning the same as property of the community estate.

PRAYER FOR RELIEF. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

CERTIFICATE OF COMPLIANCE.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

APPENDIX . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

# INDEX OF AUTHORITIES

**CONSTITUTION AND STATUTES**:                                     **Page**

TEX. CONST. ART. XVI, § 15     14

TEX. FAM. CODE ANN. § 3.001     14

TEX. FAM. CODE ANN. § 4.001     14

TEX. FAM. CODE ANN. § 4.003     15

TEX. FAM. CODE ANN. § 4.004     15

TEX. FAM. CODE ANN. § 4.005     15

**CASES**                                          **Page**

**State**

*Barnard v. Barnard*, 133 S.W.3d 782, 790 (Tex. App.– Ft. Worth, 2004)     14

*Coker v. Coker,* 650 S.W.2d 391, 393 (Tex. 1983)     15, 16

*Eggemeyer v. Eggemeyer*, 554 S.W.2d 137, 139 (Tex.1977)     2

*Estate of Hanau v. Hanau*, 730 S.W.2d 663 (Tex. 1987)     18

*Fazakerly v. Fazakerly*, 996 S.W.2d 260 (Tex. App.—Eastland 1999)     15

*Holloway v. Holloway*, 671 S.W.2d 51 (Tex. App.-Dallas 1983, writ dism'd)     19

*Huie v. DeShazo*, 922 S.W.2d 920, 927–28 (Tex.1996)     3

*Licata v. Licata*, 11 S.W.3d 269, 272-73

(Tex.App.–Houston [14th Dist.] 1999, pet. denied)      14

*Mai v. Mai*, 853 S.W.2d 615, 618
(Tex.App.-Houston [1st Dist.] 1993, no writ)      13

*Material P'ships, Inc. v. Ventura*, 102 S.W.3d 252, 257
(Tex.App.– Houston [14th Dist.] 2003, pet. denied)      3

*McClary v. Thompson*, 65 S.W.3d 829, 837
(Tex. App.—Fort Worth 2002, pet. denied)      15

*McElwee v. McElwee*, 911 S.W.2d 182, 189
(Tex.App.-Houston [1st Dist.] 1995, writ denied)      13, 18

*Merrell Dow Pharmaceuticals, Inc. v. Havner*, 953 S.W.2d 706, 711,
40 Tex. Sup. Ct. J. 846 (Tex. 1997)      3

*Miller v. Miller*, 700 S.W.2d 941 (Tex. App.—Dallas 1985, writ ref'd n.r.e.)      16

*Murff v. Murff*, 615 S.W.2d 696 (Tex. 1981)      2

*Pearce v. Pearce*, 824 S.W.2d 195, 200 (Tex. App.—El Paso 1991, writ denied)      15

*Plas-Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 445,
32 Tex. Sup. Ct. J. 329 (Tex. 1989)      4

*Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635,
29 Tex. Sup. Ct. J. 301 (Tex. 1986)      4

*Robles v. Robles*, 965 S.W.2d 605
(Tex. App.-Houston [1st Dist.] 1998, pet. denied)      18

Sandone v. Miller–Sandone, 116 S.W.3d 204, 208
(Tex.App.-El Paso 2003, no pet.)      13

*Schlueter v. Schlueter*, 975 S.W.2d 584, 589 (Tex.1998)      2

*Smith v. Smith*, 22 S.W.3d 140, 143–44
(Tex.App.-Houston [14th Dist.] 2000, no pet.)     3

*Tate v. Tate*, 55 S.W.3d 1, 5-6 (Tex.App.– El Paso 2000, no pet.)     2

*Temple-Eastex, Inc. v. Addison Bank*, 672 S.W.2d 793, 798 (Tex. 1984)     16

*Wal–Mart Stores, Inc. v. Miller*, 102 S.W.3d 706, 709 (Tex.2003)     3

*Welder v. Welder*, 794 S.W.2d 420
(Tex. App.-Corpus Christi 1990, no writ)     19, 20

*Winger v. Pianka*, 831 S.W.2d 853, 854
(Tex. App.—Austin 1992, writ denied)     15

*Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex.1990)     2

*Zagorski v. Zagorski*, 116 S.W.3d 309
(Tex. App.-Houston [14th Dist.] 2003, pet. denied)     18

## **PREAMBLE**

The Reporter's Record will be cited as "RR Vol [#], [Page #s]:[Line #s],"

and the Clerk's Record will be cited as "CR, [Page #s]:[Line #s]."

# STATEMENT OF THE CASE

This is an appeal from a Final Decree of Divorce entered on October 14, 2014 by the County Court at Law of Rusk County, Texas, Honorable Judge Robin D. Sage, sitting by assignment, presiding. (CR, 26-36)  Petitioner/Appellee filed an Original Petition for Divorce on December 15, 2011. (CR, 4)  Trial was commenced on April 21, 2014, recessed for a ruling on characterization of property, and concluded on August 13, 2014.  (CR, 56)  The trial court made its Findings of Fact and Conclusions of Law in response to Respondent's request on December 9, 2014.  (CR, 45-48) Respondent/Appellant, Andrew Ben Vinson, commenced this appeal by notice filed on December 12, 2014.  (CR, 49).

**STANDARD OF REVIEW**

The standard of review for property division issues in family law cases is generally abuse of discretion. A trial court has broad discretion in dividing the "estate of the parties," but must confine itself to community property. *Eggemeyer v. Eggemeyer*, 554 S.W.2d 137, 139 (Tex.1977).

The trial court's discretion to divide marital property upon divorce should be corrected on appeal only when an abuse of discretion has been shown. *Murff v. Murff*, 615 S.W.2d 696 (Tex. 1981); *Schlueter v. Schlueter*, 975 S.W.2d 584, 589 (Tex.1998). A trial court abuses its discretion when it acts without reference to any guiding principles or acts in an arbitrary or unreasonable manner. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex.1990). To determine whether the trial court abused its discretion in its property division incident to divorce, the court should engage in a two-pronged inquiry: (1) Did the trial court have sufficient information upon which to exercise its discretion; and (2) Did the trial court err in its application of discretion? *See Tate v. Tate*, 55 S.W.3d 1, 5-6 (Tex.App.– El Paso 2000, no pet.).

The trial court has no discretion in making a determination of law or in the application of the law. Consequently, the trial court's erroneous legal conclusion, even in an unsettled area of the law, is an abuse of discretion. *Huie v. DeShazo*,

922 S.W.2d 920, 927–28 (Tex.1996).  The appellate court should review the trial court's conclusions of law de novo.  *Smith v. Smith*, 22 S.W.3d 140, 143–44 (Tex.App.-Houston [14th Dist.] 2000, no pet.).  The standard of review for conclusions of law is whether they are correct.  *Material P'ships, Inc. v. Ventura*, 102 S.W.3d 252, 257 (Tex.App.– Houston [14th Dist.] 2003, pet. denied).

In reviewing a legal sufficiency or no-evidence point of error, an appellate court must consider only the evidence and inferences tending to support the trial court's finding and disregard all contrary evidence and inferences. *See Wal–Mart Stores, Inc. v. Miller*, 102 S.W.3d 706, 709 (Tex.2003).  An appellate court should sustain a "no evidence" point when the record discloses one of the following: (a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla of evidence, or (d) the evidence establishes conclusively the opposite of a vital fact.  *See Merrell Dow Pharmaceuticals, Inc. v. Havner*, 953 S.W.2d 706, 711, 40 Tex. Sup. Ct. J. 846 (Tex. 1997).

When conducting a factual sufficiency review, an appellate court must consider all of the evidence, including any evidence contrary to the verdict.  *Plas-Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 445, 32 Tex. Sup. Ct. J. 329 (Tex.

1989).  Furthermore, an appellate court must reverse on the basis of factual insufficiency if the trial court's finding is so against the great weight and preponderance as to be manifestly unjust.  *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635, 29 Tex. Sup. Ct. J. 301 (Tex. 1986).

## ISSUES PRESENTED

## Point of Error No. 1

The trial court abused its discretion in failing to confirm the interest and accumulations upon Appellant's separate property interest in Appellant's Texas Bank 401k Plan as Appellant's separate property, and partitioning the same as property of the community estate.

## STATEMENT OF FACTS

Andrew Ben Vinson ("Appellant") and Emma Ruth Vinson ("Appellee") were married on or about February 14, 1999, and ceased to live together as husband and wife on or about October 9, 2011. (CR, 5). Appellee filed an Original Petition for Divorce on December 15, 2011 on the grounds of insupportability. (CR, 4-5) The parties executed and entered into an Agreement in Contemplation of Marriage ("Premarital Agreement") on February 10, 1999.[1] (CR, 45; Exhibit A– First Amended Original Petition for Divorce, with attachment).

Summarized, the relevant provisions of the Premarital Agreement provide as follows (Exhibit A, Agreement in Contemplation of Marriage):

- ¶ 1.05 sets forth the parties' intention to identify and preserve their respective separate and community property rights.

- ¶ 2.01 identifies the parties' separate property, incorporates the parties' separate property schedules to the Agreement, and sets forth the parties'

---

[1] Due to clerical error, the Appellee's Amended Petition for Divorce, to which the referenced Premarital Agreement was attached, was not included in the originally designated record on appeal. Appellant is making efforts contemporaneous to the filing of this brief to have the Clerk's Record properly supplemented to include all pleadings relevant to this appeal. For the time being, and praying for the indulgence of the Court, Appellant has exhibited Appellee's Amended Petition for Divorce as filed with the clerk of the trial court, with the attached Agreement to reference in regards to the terms and conditions of the premarital agreement.

intention to preserve the separate nature of identified property, as well as income and enhancement thereto, during and after the marriage.

- ¶ 2.03 provides that separate property identified to the Agreement is to be preserved before, during, and after the marriage

- ¶ 2.04 provides generally that property acquired during the marriage, including income, compensation and contributions to a retirement account, which is not otherwise defined as separate property by the Agreement, is community property, and contains a provision which transforms separate property to community property under certain, limited conditions.

- ¶ 2.06 provides that income earned from and enhancement of value to the parties' separate property identified to and incorporated into the Agreement retains its separate property character.

- ¶ 11.01 provides for a mandatory property division upon divorce with each spouse receiving 100% of their separate property, and 50% of the community property.

- Schedule A – Assets of Ben Andrew Vinson – includes the retirement account at issue as line item no. 5: CNB 401K Plan (estimate), $234,424.00.

The trial court found the Premarital Agreement to be valid and enforceable in this action.  (CR, 45)

After the hearing, the trial court divided the marital estate between the parties and confirmed to each party their separate property; all in accord with the provisions of the premarital agreement. (CR, 27-30)(division of marital property); (CR, 32-34)(confirmation of separate property). The property divisions relevant to this appeal include the following:

*Property Awarded To Husband:*

H-7 "A portion of Ben Andrew Vinson, Sr.'s retirement benefits in the Texas Bank 401k Plan arising out of Ben Andrew Vinson, Sr.'s employment with Texas Bank as of the date that the Final Decree is signed by the Court, that portion being FIFTY PERCENT (50%) of the amount remaining in the account after deduction of the amount owned by Ben Andrew Vinson, Sr.'s separate estate ($234,000.00), together with any interest, dividends, gains, or losses on the amount awarded to husband arising since that date and more particularly defined in a Qualified Domestic Relations Order signed by the Court on the day this Final Decree of Divorce is signed." (CR, 28)

*Property Awarded To Wife:*

W-5 "A portion of Ben Andrew Vinson, Sr.'s retirement benefits in the Texas Bank 401k Plan arising out of Ben Andrew Vinson, Sr.'s employment with Texas Bank as of the date that the Final Decree is signed by the Court, that portion being FIFTY PERCENT (50%) of the amount remaining in the account after deduction of the amount owned by Ben Andrew Vinson, Sr.'s separate estate ($234,000.00), together with any interest, dividends, gains, or losses on the amount awarded to husband arising since that date and more particularly defined in a Qualified Domestic Relations Order signed by the Court on the day this Final Decree of Divorce is signed." (CR, 29)

In relevant part, the trial court further determined and confirmed the following to be the separate property of the parties:

H-5 "The sum of total sum of $234,000.00 in Ben Andrew Vinson, Sr.'s retirement benefits in the Texas Bank 401k Plan arising out of Ben Andrew Vinson, Sr.'s employment with Texas Bank as of the date that the Final Decree of Divorce is signed by the Court." (CR, 33)

The following summary describes the relevant testimony and evidence introduced at trial regarding Appellant's Texas Bank 401k Plan.

Appellant testified that he was asking the trial court to confirm his premarital contributions to his Texas Bank 401k Plan– identified in Schedule A of the Premarital Agreement as being approximately $234,000.00– and any interest and accumulation thereto as his separate property. (RR4, 61-2) There was a prior stipulation between the parties that the value of Appellant's Texas Bank 401k Plan account was approximately $234,000 at the time of marriage. (RR4, 63) However, owing to clerical error, the transcript of that hearing was not available at the time of the filing of this brief.[2] Appellant's recollection of the stipulation, as evidenced by the available record, is that the parties only stipulated to the value of the plan at the time of marriage as set forth in the schedules to the premarital

---

[2] Appellant has requested that the Court Reporter supplement the record on appeal as soon as is feasible, and will, if necessary, supplement this brief to conform to that record once properly supplemented.

agreement, and were seeking the ruling of the trial court as to the proper characterization of that amount under the provisions of the premarital agreement, but entered no stipulation in regards to the amount or characterization of interest and accumulation to that amount. (RR4, 62-3)

Appellant accrued his separate property interest in the Texas Bank 401k while working at Citizens National Bank prior to the parties marriage. (RR4, 62) After beginning employment at Texas Bank in February 1999– approximately the same time as the parties were married– the Appellant "rolled over" the prior balance of his 401k from Citizens National Bank to the Texas Bank 401k Plan in 2002. (RR4, 67) The accumulated value of those rollover funds– as distinguished from new contributions– as of December 31, 2013 was $347,206.37. (RR6, Exhibit P-5, Pg. 3)

The pertinent part of Exhibit P-5 identifies the following:

| Summary of contributions by type | | | | | | |
|---|---|---|---|---|---|---|
| Contribution type | Current Quarter | Year-to-date | Since Initial Investment | Ending Balance | Percent vested | Ending vested balance |
| Your Contributions | $0.00 | $0.00 | $172,044.25 | $213,421.39 | 100% | $213,421.29 |
| Rollover Into Plan | $0.00 | $0.00 | $293,891.00 | $347,206.37 | 100% | $347,206.37 |
| Deemed Loan Repayments | $0.00 | $0.00 | $0.00 | $0.00 | 100% | $0.00 |
| Matching | $0.00 | $0.00 | $39,807.28 | $46,606.18 | 100% | |
| Total | $0.00 | $0.00 | $505,742.53 | $607,233.84 | | $607,233.84 |

The trial court was made aware of this information by the testimony of Appellant during the trial, who referenced the exhibit and supplied the only testimony on the matter. (RR4, 67-8) Upon considering the evidence, the trial court ruled:

> "As to the Texas 401(k), I previously found the $234,000 was his separate property. Any contributions or increase in that amount of money that was over that, I find would have would have been commingled, and so I'm using the $234,000 figure as his separate property." (RR4, 78)

## SUMMARY OF THE ARGUMENT

Appellant complains that the trial court abused its discretion and committed reversible error by failing to award Appellant the interest and accumulation upon his separate property interest in the Texas Bank 401k Plan, contrary to the provisions of the Premarital Agreement. As a result, Appellant's separate property interest in the 401k plan was confirmed at $234,000.00, instead of $347,206.37– the amount of Appellant's separate property rollover plus interest and accumulation over time. The trial court's ruling that such funds were "commingled," when such funds are clearly distinguished from contributions made after the rollover, and therefore traceable, is contrary to the facts adduced at trial and applicable law.

## ARGUMENT AND AUTHORITIES

### Point of Error No. 1

The trial court abused its discretion in failing to confirm the interest and accumulations upon Appellant's separate property interest in Appellant's Texas Bank 401k Plan as Appellant's separate property, and partitioning the same as property of the community estate.

If the division of marital property lacks sufficient evidence in the record to support it, then the trial court's division is an abuse of discretion. *See Sandone v. Miller–Sandone*, 116 S.W.3d 204, 208 (Tex.App.-El Paso 2003, no pet.) (holding that trial court abused its discretion in dividing property because there was no evidence of community estate's value); *see also Mai v. Mai*, 853 S.W.2d 615, 618 (Tex.App.-Houston [1st Dist.] 1993, no writ) (legal and factual sufficiency are relevant factors in assessing whether trial court abused its discretion).

If the trial court mischaracterizes separate property as community property, the error requires reversal because the subsequent division of the community estate divests the spouse of his or her separate property. *McElwee v. McElwee*, 911 S.W.2d 182, 189 (Tex.App.-Houston [1st Dist.] 1995, writ denied). When there is insufficient evidence before the trial court to support a determination that an item of property is the separate property of one spouse reversal and remand is proper because the appellate court "cannot say whether the trial court properly or

improperly divested either party of their separate property." *Barnard v. Barnard*, 133 S.W.3d 782, 790 (Tex. App.– Ft. Worth, 2004).

Texas law generally provides that all property, both real and personal, or a spouse owned or claimed before marriage, and that acquired afterward by gift, devise or descent, shall be the separate property of that spouse. *See* Tex. Const. Art. XVI, § 15; *See also* TEX. FAM. CODE ANN. § 3.001. The law further places the burden of overcoming the presumption of community property on the party asserting a separate property interest by clear and convincing evidence. *Licata v. Licata*, 11 S.W.3d 269, 272-73 (Tex.App.–Houston [14th Dist.] 1999, pet. denied). In this case, however, the marital property rights of the parties are determined by the Premarital Agreement, and their separate property interests at the inception of the marriage were identified in property schedules incorporated in the Agreement.

A premarital agreement is an agreement between prospective spouses made in contemplation of marriage and to be effective on marriage. TEX. FAM. CODE ANN. § 4.001(1) Property which may be subject to a premarital agreement is broadly defined to include any "interest, present or future, legal or equitable, vested or contingent, in real or personal property, including income and earnings." TEX. FAM. CODE ANN. § 4.001(2). Texas law defines "property" very broadly to include every species of valuable right and interest. *Winger v. Pianka*, 831 S.W.2d

853, 854 (Tex. App.—Austin 1992, writ denied). This broad definition of property encompasses a variety of assets, including retirement benefits. TEX. FAM. CODE ANN. § 4.003.

A premarital agreement becomes effective on marriage, and may direct the disposition of the parties' property upon separation, marital dissolution, death, or any other specified event. TEX. FAM. CODE ANN. § 4.004; TEX. FAM. CODE ANN. § 4.003(a)(3). A premarital agreement may be amended or revoked after marriage only in a writing signed by both parties. TEX. FAM. CODE ANN. § 4.005.

A premarital agreement is subject to the same general rules of construction and interpretation as any contract. When presented with such an agreement, the court must consider not only the meaning given to the terms of the agreement by the parties, but also the legal effect that the parties intended the agreement to have. *See generally*, *McClary v. Thompson*, 65 S.W.3d 829, 837 (Tex. App.—Fort Worth 2002, pet. denied); *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983); *Pearce v. Pearce*, 824 S.W.2d 195, 200 (Tex. App.—El Paso 1991, writ denied).

The language of a contract should be given its plain grammatical meaning. *Fazakerly v. Fazakerly*, 996 S.W.2d 260 (Tex. App.—Eastland 1999). When constructing or interpreting a contract, the entire agreement should be read and taken as a whole to effectuate the parties' true intentions. *Coker v. Coker*, 650

S.W.2d 391 (Tex. 1983); *Miller v. Miller*, 700 S.W.2d 941 (Tex. App.—Dallas 1985, writ ref'd n.r.e.). Therefore, "an interpretation which gives a reasonable, lawful, and effective meaning to all of the terms is preferred to an interpretation which leaves a part unreasonable, unlawful, or of no effect." Restatement (Second) of Contracts § 203(a).  As a general rule, contract terms are construed against the drafter in the case of an ambiguity. *Temple-Eastex, Inc. v. Addison Bank*, 672 S.W.2d 793, 798 (Tex. 1984).  Just as express terms are favored over implied terms and specific terms are favored over general terms, "terms stated earlier in an agreement are favored over the subsequent terms." *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983).

The Premarital Agreement between the parties is a facially valid and enforceable prenuptial agreement which specifically identifies items of separate property the parties intended to be kept separate during and after their marriage, waives any claim of community property, contribution, or reimbursement for improvement or enhancement in value to such property, and preserves such separate property in the event of a division of property in divorce.  *See* Exhibit A – Agreement in Contemplation of Marriage, ¶¶ 1.05, 2.01, 2.03, 2.06, 2.07, 14.01, and 16.06.  This intended division is accomplished via the provisions of the Agreement which define the separate property subject to the Agreement and the

provides for the inclusion of property schedules in which each party specifically identifies items of their separate property to be incorporated into the Agreement. Id. at ¶¶ 2.01, 4.01, 16.04, Schedule A, Schedule B.

The retirement fund at issue here– formerly the CNB 401k plan identified in the Appellant's separate property schedule, and later rolled over into the Appellant's Texas Bank 401k Plan– is identified to the Premarital Agreement as Appellant's separate property. As such, pursuant to ¶¶ 2.01, 2.03, and 2.06 of the Agreement, all increment in value or appreciation of the value of Appellant's separate property interest in his 401k plan was Appellant's separate property.

While the trial court properly confirmed $234,000.00 of the 401k as Appellant's separate property pursuant to the Premarital Agreement, the trial court failed to award any accumulation and enhancement of those funds, though traceable, as Appellant's separate property.

According to the testimony of Appellant– the only testimony on the subject– and the plain breakdown of the different contribution components of the 401k plan provided by American Funds, (RR6, Exhibit P-5), the traceable value of Appellant's separate property interest– a.k.a., the rollover– grew to increase in value over time to $347,206.37. Instead of awarding Appellant the enhanced value of his clearly identified separate property interest in the 401k, the trial court

ruled that any appreciation over and above the $234,000.00 identified in Appellant's separate property schedule in 1999 was "commingled" with the community estate's interest in the 401k plan. Not only is this ruling contrary to the express language of the Premarital Agreement, which specifically preserves to Appellant his existing separate property interests at the time, as well as any increment in value or appreciation to such property during and after marriage, it incorrectly applies Texas law concerning the commingling of marital estates.

Texas law provides that when separate and community funds are commingled in a manner defying segregation and identification, it is presumed that the entire fund consists of community property. *Estate of Hanau v. Hanau*, 730 S.W.2d 663 (Tex. 1987); *Robles v. Robles*, 965 S.W.2d 605 (Tex. App.-Houston [1st Dist.] 1998, pet. denied); *McElwee v. McElwee*, 911 S.W.2d 182 (Tex. App.-Houston [1st Dist.] 1995, writ denied). The presumption, however, can be dispelled through proof illustrating that the separate properties which went in never came out. Thus, a showing that community and separate funds were deposited in the same account does not divest the separate funds of their identity and establish the entire amount as community when the separate funds can be traced and the trial court can accurately determine each party's interest. *Zagorski v. Zagorski*, 116 S.W.3d 309 (Tex. App.-Houston [14th Dist.] 2003, pet. denied);

*Welder v. Welder*, 794 S.W.2d 420 (Tex. App.-Corpus Christi 1990, no writ);

*Holloway v. Holloway*, 671 S.W.2d 51 (Tex. App.-Dallas 1983, writ dism'd).

Irrespective of tracing method employed, the *Welder* decision makes it clear

that traceability is the touchstone when separate property has been alleged to have

been commingled.

> "As long as separate property can be definitely traced and identified, it remains separate property regardless of the fact that it may undergo mutations and changes. Norris v. Vaughan, 260 S.W.2d 676, 679 (Tex.1953). Specifically, our courts have found no difficulty in following separate funds through bank accounts. Sibley v. Sibley, 286 S.W.2d 657, 659 (Tex.Civ.App.-Dallas 1955, writ dism'd). *A showing that community and separate funds were deposited in the same account does not divest the separate funds of their identity and establish the entire amount as community when the separate funds may be traced and the trial court is able to determine accurately the interest of each party.* Holloway v. Holloway, 671 S.W.2d 51, 60 (Tex.App.-Dallas 1983, writ dism'd); Harris v. Ventura, 582 S.W.2d 853, 855 (Tex.Civ.App.-Beaumont 1979, no writ). One dollar has the same value as another and under the law there can be no commingling by the mixing of dollars when the number owned by each claimant is known. Trawick v. Trawick, 671 S.W.2d 105, 110 (Tex.App.-El Paso 1984, no writ); Farrow v. Farrow, 238 S.W.2d 255, 257 (Tex.Civ.App.-Austin 1951, no writ). In addition, when separate funds can be traced through a joint account to specific property purchased with those funds, without surmise or speculation about funds withdrawn from the account in the interim, then the property purchased is also separate. *See* McKinley v. McKinley, 496 S.W.2d 540, 543-44 (Tex.1973); DePuy v. DePuy, 483 S.W.2d 883, 887-88 (Tex.Civ.App.-Corpus Christi 1972, no writ)." *Welder v. Welder*, 794 S.W.2d 420, 425 (Tex. App. 1990).

Tracing the enhancement in value of Appellant's separate property interest in his 401k plan is made easy by the documentation provided by Petitioner's Exhibit 5, which includes a simple reference table segregating the source of each contribution to the fund and the growth of each fund source over time. The table shows the following:

| Summary of contributions by type | | | | | | |
|---|---|---|---|---|---|---|
| Contribution type | Current Quarter | Year-to-date | Since Initial Investment | Ending Balance | Percent vested | Ending vested balance |
| Your Contributions | $0.00 | $0.00 | $172,044.25 | $213,421.39 | 100% | $213,421.29 |
| Rollover Into Plan | $0.00 | $0.00 | $293,891.00 | $347,206.37 | 100% | $347,206.37 |
| Deemed Loan Repayments | $0.00 | $0.00 | $0.00 | $0.00 | 100% | $0.00 |
| Matching | $0.00 | $0.00 | $39,807.28 | $46,606.18 | 100% | |
| Total | $0.00 | $0.00 | $505,742.53 | $607,233.84 | | $607,233.84 |

The "Rollover Into Plan" row identifies the Appellant's rollover contribution into the Plan at the date of initial investment. The initial investment amount of $293,891.00– made in 2002 according to other parts of the account statement– is consistent with Appellant's testimony that the amount rolled over was the amount of his premarital contributions, plus accumulations between 1999 and 2002. The table then shows the present value of the amount of the initial rollover investment, including interest and accumulation across all funds, to be $347,206.37.

Based upon the Appellant's testimony, the provisions of the Premarital Agreement, and the clearly traceable growth of Appellant's separate property interest in the 401k plan by virtue of the segregation of the rollover account from contributions made directly into the plan after the rollover, it is clear that the trial court's confirmation of only $234,000 of the 401k as Appellant's separate property was an abuse of discretion. While any error in the confirmation of a spouse's separate property in divorce may warrant reversal and remand, the error in valuation here– approximately $113,000.00– is significant enough to substantially skew the remainder of the trial court's division of property. As such, only an order reversing the trial court's division of property and directing a just and right division of the community property after awarding Appellant the full value of his separate property interest in the 401k plan, including traceable enhancement, will rectify the error.

## PRAYER FOR RELIEF

WHEREFORE, Appellant, Andrew Ben Vinson prays that this Honorable Court reverse and set aside in all things the judgment of the trial court as to the division of marital property as well as the confirmation of the Appellant's separate property, and remand this cause for new trial to determine a just and right division of the marital property in light of the proper valuation of Appellant's separate

property. Appellant also prays for such other and further relief to which Appellant may be entitled at law and in equity.

Respectfully Submitted,
LAW OFFICES OF JOE SHUMATE
107 N. Main
P O Box 1915
Henderson, TX 75653
Tel: (903) 657-1416
Fax: (903) 655-8211

By:_____
    JOE SHUMATE
    State Bar No. 18327500
    JAMES J. ROSENTHAL
    State Bar No. 24088801
    Attorney for Appellant

# CERTIFICATE OF COMPLIANCE WITH RULE 9.4(i)(3)

## CERTIFICATE OF COMPLIANCE

Pursuant to Texas Rule of Appellate Procedure 9.4(i)(3), I hereby certify that this brief contains 3,465 words (excluding any caption, identity of parties and counsel, statement regarding oral argument, table of contents, index of authorities, statement of the case, statement of issues presented, statement of jurisdiction, statement of procedural history, signature, proof of service, certification, certificate of compliance, and appendix). This is a computer-generated document created in WordPerfect, using 14-point typeface for all text, except for footnotes which are in 12-point typeface. In making this certificate of compliance, I am relying on the word count provided by the software used to prepare the document.

Date: May 6, 2015

_____

Joe Shumate
James J. Rosenthal
Attorney for Appellant, Andrew Ben Vinson
LAW OFFICES OF JOE SHUMATE
109 N. Jackson
P.O. Box 1915
Henderson, TX 75653-1915
903-657-1416  Phone
903-655-8211 Fax
shumate.law@suddenlinkmail.com

# CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above and foregoing document has been served upon all known counsel of record and/or parties without counsel via:

| | |
|---|---|
| _____ | certified U.S. mail, return receipt requested |
| _____ | hand/messenger delivery |
| _____ | regular first class U. S. mail, postage prepaid |
| __X__ | facsimile transmission as set out below. |

Said service being made this 6th day of May, 2015, by sending to:

Beau T. Sinclair
SBOT NO. 24029835
400 S. Broadway Ave.
Suite 102
Tyler, TX 75702
Fax: (903) 753-8289

_____
JAMES J. ROSENTHAL

# APPENDIX

**COURT DOCUMENTS**

Exhibit A:   First Amended Original Petition for Divorce (with Agreement in Contemplation of Marriage, attached)

Exhibit B:   Final Decree of Divorce

**CONSTITUTION AND STATUTES**

TEX. CONST. ART. XVI, § 15

TEX. FAM. CODE ANN. § 3.001

TEX. FAM. CODE ANN. § 4.001

TEX. FAM. CODE ANN. § 4.003

TEX. FAM. CODE ANN. § 4.004

TEX. FAM. CODE ANN. § 4.005

# EXHIBIT A

First Amended Original Petition for Divorce (with Agreement in
Contemplation of Marriage, attached)

| | | |
|---|---|---|
| IN THE MATTER OF | § | IN THE COUNTY COURT |
| THE MARRIAGE OF | § | AT LAW |
| | § | |
| EMMA RUTH VINSON AND | § | IN AND FOR |
| BEN ANDREW VINSON, SR. | § | RUSK COUNTY, TEXAS |

## *First Amended Original Petition for Divorce*

*1.      Discovery Level*

Discovery in this case is intended to be conducted under level 2 of rule 190 of the Texas

Rules of Civil Procedure.

*2.      Parties*

This suit is brought by Emma Ruth Vinson, Petitioner.  The last three numbers of

Petitioner's driver's license number are 870.  The last three numbers of Petitioner's Social

Security number are 098.

Ben Andrew Vinson is Respondent.

*3.      Domicile*

Petitioner has been a domiciliary of Texas for the preceding six-month period and a

resident of this county for the preceding ninety-day period.

*4.      Service*

Process should be served on Respondent by and through his attorney of record, Joe

Shumate.

*5.      Protective Order Statement*

No protective order under title 4 of the Texas Family Code is in effect, and no application

for a protective order is pending with regard to the parties to this suit.

---

6.   *Dates of Marriage and Separation*

The parties were married on or about February 14, 1999, and ceased to live together as husband and wife on or about October 9, 2011.

7.   *Grounds for Divorce*

The marriage has become insupportable because of discord or conflict of personalities between Petitioner and Respondent that destroys the legitimate ends of the marriage relationship and prevents any reasonable expectation of reconciliation.

Respondent is guilty of cruel treatment toward Petitioner of a nature that renders further living together insupportable.

8.   *Children of the Marriage*

There is no child born or adopted of this marriage, and none is expected.

9.   *Marital-Property Agreement*

Petitioner and Respondent have entered into a marital-property agreement defining their rights to all their property, both community and separate. A copy of the agreement is attached to this pleading as Exhibit "A". Petitioner requests the Court to enforce the agreement and divide the marital estate in accordance with its terms.

10.   *Division of Community Property*

Petitioner requests the Court to divide the estate of Petitioner and Respondent in a manner that the Court deems just and right, as provided by law.

11.   *Separate Property*

Petitioner owns certain separate property that is not part of the community estate of the parties, and Petitioner requests the Court to confirm that separate property as Petitioner's

separate property and estate.

12.    *Request for Confirmation of Equitable Lien*

Petitioner would show that during the marriage of the parties, Respondent entered into a transaction, wherein credit was extended to him and he became liable or obligation for the repayment, of credit extended by a third party, which obligation should have been satisfied wholly from Respondent's separate property. (Agreement in Contemplation of Marriage § 3.03). Despite such provision, Respondent failed to pay such obligation and community assets were seized by the third party creditor to satisfy the payment of the obligation resulting in the imposition of an equitable lien by the community estate against Respondent's separate estate in accordance with the Agreement in Contemplation of Marriage § 3.04.

Petitioner hereby requests that the Court confirm the imposition of an equitable lien against the assets of Respondent's separate property estate and direct Respondent to execute any and all such documents as may be necessary to confirm and record such lien.

Pleading in the alternative, and without waiving the foregoing, Petitioner requests the Court to reimburse the community estate for funds or assets expended by the community estate for the benefit of Respondent's separate estate. Those expenditures resulted in a direct benefit to Respondent's separate estate. The community estate has not been adequately compensated for or benefited from the expenditure of those funds or assets, and a failure by the Court to allow reimbursement to the community estate will result in an unjust enrichment of Respondent's separate estate at the expense of the community estate.

13.    *Request for Change of Name*

Petitioner requests a change of name to Emma Ruth Hughes.

*14.    Attorney's Fees, Expenses, Costs, and Interest*

It was necessary for Petitioner to secure the services of Robert R. Foster, a licensed attorney, to prepare and prosecute this suit. To effect an equitable division of the estate of the parties and as a part of the division, judgment for attorney's fees, expenses, and costs through trial and appeal should be granted against Respondent and in favor of Petitioner for the use and benefit of Petitioner's attorney; or, in the alternative, Petitioner requests that reasonable attorney's fees, expenses, and costs through trial and appeal be taxed as costs and be ordered paid directly to Petitioner's attorney, who may enforce the order in the attorney's own name. Petitioner requests postjudgment interest as allowed by law.

*15.    Prayer*

Petitioner prays that citation and notice issue as required by law and that the Court grant a divorce and all other relief requested in this petition.

Petitioner prays that Petitioner's name be changed as requested above.

Petitioner prays for attorney's fees, expenses, costs, and interest as requested above.

Petitioner prays for general relief.

Respectfully submitted,

_____
ROBERT R. FOSTER
Attorney for Petitioner
227 East Tyler Street
Longview, Texas 75601
State Bar No. 07295200
Phone No. (903) 236-3777
Fax No. (903) 757-8137

## Certificate of Service

I hereby certify that a true and correct copy of the above and foregoing was delivered to all parties or their counsel of record in accordance with the Texas Rules of Civil Procedure at the time the original was delivered to the Court.

_____
ROBERT R. FOSTER
Attorney for Petitioner

# AGREEMENT IN CONTEMPLATION OF MARRIAGE

This Agreement in Contemplation of Marriage is made this the _____10th_____ day of
_____February_____, 1999, by and between **Ben Andrew Vinson**, a single man
("Ben"), and **Emma Ruth Hughes**, a single woman ("Ruthie"), in consideration of the covenants
and agreements herein contained and further to embody their mutual desire to clarify and settle their
respective property rights prior to embarking upon their marriage.

## ARTICLE I

## STIPULATIONS

The parties hereby stipulate as follows:

1.01    Both **Ben** and **Ruthie** reside and are domiciled in Rusk County, Texas.

1.02    **Ruthie** is the parent of **David Aulden Hughes, Summer Therese Hughes, and
Luke Benjamin Hughes**. **Ruthie** is and shall continue to be responsible for the health, education,
support, maintenance and welfare of her children by prior marriage.

1.03    **Ben** is the parent of **Ben Vinson, Ann Vinson, and Bonnie Vinson**. **Ben** is and shall
continue to be responsible for the health, education, support, maintenance and welfare of his children
by prior marriage.

1.04    The parties intend to be married on or about February 14, 1999, in Rusk County,
Texas.

1.05    **Ben** and **Ruthie** intend and desire by this Agreement to define their respective
ownership interests in property each own prior to marriage and in property to be acquired during the
marriage and to set forth methods by which their respective community and separate property
interests will be determined upon termination of their marriage by death or divorce.

1.06    Each of the parties has previously been married. Although neither party is desirous
of or contemplating that their marriage will end in divorce, they both realize that their marital union
may not last. Therefore, the parties wish in their present state of love and affection to provide for
an equitable and fair division of the property accumulated during their marriage in the event of
divorce and thereby to seek as unacrimonious as possible a dissolution of their marriage by divorce.

1.07    To the best of their abilities the parties to this Agreement have disclosed to one
another the full nature, extent and probable value of all their real and personal property and other
assets, tangible and intangible, their liabilities and their expectancies. **Each party acknowledges
that he or she was afforded full access to the financial records of the other and has or could
have obtained adequate knowledge of the property and financial obligations of the other prior
to entering into this Agreement. Each party voluntarily and expressly waives any right to
further disclosure of the property and financial obligations of the other.**

_____
Agreement in Contemplation of Marriage - Page 1

**EXHIBIT**

**A**

*ERH*

*BAV*

1.08    The parties understand and agree that the amounts stated in connection with the property and financial obligations disclosures they have made to one another in the course of negotiation of this Agreement (including, but not limited to those contained in the Schedules attached to this Agreement) are approximate and, while intended to be reasonably accurate, may vary now and in the future due to the inability to precisely determine fair market values with respect to some of the properties and liabilities so disclosed. The parties intend the provisions of this Agreement to be binding and applicable irrespective of any variance in the fair market value of any property or liability.

## ARTICLE II

## OWNERSHIP OF PROPERTY

2.01    The following described property shall at all times be and remain the sole, separate and exclusive property of the party from whom, or from whose property, it is derived:

(a)    all property owned by **Ben** or **Ruthie** at the time of their marriage, including but not limited to the property listed on Schedules A and B attached hereto;

(i)    all property that may be acquired by **Ben** or **Ruthie** during this marriage by gift, devise or descent, including gifts and bequests from one party to the other;

(ii)    the recovery for personal injuries, if any, sustained by either **Ben** or **Ruthie** during this marriage, except any recovery for loss of earning capacity;

(iii)    all increment in value or appreciation of separate property, including increases due in whole or in part to one party's expenditure of time and talent toward preserving or enhancing his or her separate property;

(iv)    all proceeds from loans made to any proprietary, partnership or corporate business constituting a party's separate property, including proceeds of loans personally guaranteed by such party to which the lender has restricted recourse to the separate estate of such party, and all loans with respect to which the lender has restricted recourse to the separate estate of such party;

(v)    all income or revenue arising from such separate property, except for income or revenue received or receivable as salaries, bonuses, employer and employee contributions to profit-sharing or pension plans or other employee benefit retirement arrangements, or similar compensation paid or payable to or for the benefit of a party in his or her capacity as an employee of a separately-owned business entity. As used in this Agreement, "income" includes, but is not limited to, rental income, dividends and other distributions (whether in the form of stock, cash, options, debentures or other assets), income accumulated or distributed by a trust, interest (whether in bank accounts, certificates of deposit, accounts in other financial or brokerage institutions, securities, obligations or other sums owed to or to be owed to a party), increases of livestock, growing crops, and the proceeds from the sale of

oil, gas and other minerals in and under or attributable to the property of a party (whether the property is fee title, royalty, overriding royalty or working interest, rentals or delay rentals); and

(vi) all changes, exchanges and mutations of the above described properties, and all properties into which any such properties may be invested or reinvested at any time hereafter.

2.02 This Agreement shall not be construed to bar or prohibit either party from establishing the separate property character of assets presently owned or hereafter acquired but not listed, described or referred to in this Agreement. If **Ben** or **Ruthie** subsequently establishes by proof or by agreement of the parties the separate property character of any such asset, the provisions of this Agreement shall apply to such asset as if it had been described in 2.01 and on the asset schedule of the party owning such asset.

2.03 Each party's separate property shall be preserved to him or her during and after their marriage from the standpoints of management, liability, ownership, accounting and otherwise, subject to their unrestricted right by mutual agreement to modify or rescind this Agreement. Each party intends to retain and have sole management, control and disposition of his or her separate property as provided in Section 5.21 of the Texas Family Code.

2.04 All property acquired by the parties during their marriage that is not otherwise defined by 2.01 or 2.02 as separate property shall be owned by **Ben** and **Ruthie** as community property. All salaries, bonuses or similar compensation paid or payable to a party during this marriage as an employee and/or for services or labor performed during the marriage shall be community property. All employer or employee contributions made during this marriage to any retirement annuity contract, individual retirement account, profit sharing or pension plan or any other retirement savings arrangement held in the name of or on behalf of either **Ben** or **Ruthie**, together with all future increment in value attributable to such contributions, whether by investment yield or capital appreciation, shall be community property. In addition, any separate property defined by 2.01 or 2.02 which a party has knowingly invested in community property or has allowed to be commingled with community property shall be deemed to have become community property and all rights of reimbursement are hereby waived unless **Ben** and **Ruthie** agree in writing otherwise.

2.05 Each party shall retain and have sole management, control and disposition of the community property that he or she would have owned if single, as provided in Section 5.22 of the Texas Family Code.

2.06 **Ben and Ruthie each understand that except for this Agreement, income earned on either party's separate property and the enhancement of the value of either party's separate property attributable to a party's personal services, skill, efforts and work during this marriage could be community property or create a claim for reimbursement, and that by this Agreement such income and enhancements are made into separate property. Pursuant to this Agreement, neither party shall have, acquire or claim any right or interest in or claim of reimbursement from the other's separate property, whether during this marriage or thereafter and whether this marriage terminates by divorce or death.**

ERH          BAV

2.07    Ben and Ruthie each understand and agree that, pursuant to this Agreement, if either party uses his or her own separate property to make any payment toward the purchase or improvement of the other party's separate property, or either party uses community property to make any payment toward the purchase or improvement of the other party's separate property, the property so paid for or improved will remain the separate property of the owner-spouse. Unless the parties agree otherwise in writing, the party making such payment using his or her separate property or using community property will not be entitled to subsequent reimbursement from the owner-spouse's separate property in the amount of such payment, and nor shall that party have, acquire or claim any right or interest in or claim of reimbursement from the other's separate property, whether during this marriage or thereafter and whether this marriage terminates by divorce or death.

## ARTICLE III

## LIABILITIES

3.01    The liabilities and obligations described in Schedule C attached hereto are the sole liabilities and obligations of Ben. The liabilities and obligations described in Schedule D attached hereto are the sole liabilities and obligations of Ruthie.

3.02    Ben and Ruthie agree that any existing liabilities, contingent, absolute or otherwise, (including but not limited to those listed on Schedules C and D) and liabilities arising from loans described in 2.01(e) to which either is or may be obligated will be satisfied by each out of his or her separate property. Ben and Ruthie further agree that any future liabilities which may be acquired by either of them in connection with the preservation, enhancement or enlargement of his or her respective separate estate shall be the sole liability of that party's separate property. Each agrees to reimburse, indemnify and hold harmless the community estate or the other's separate estate in the event such community or separate estate is used to satisfy such obligations.

3.03    Recognizing the complexity of modern business credit transactions and each party desiring to allow the other, after the marriage, to enter into credit transactions without the other party's express approval or joinder, the parties make the following agreement respecting such future credit transactions.  Where either party, without the joinder of the other, enters into a transaction wherein credit is extended to such party or such party becomes liable or obligated for the repayment, contingent or otherwise, of credit extended by any third party, then such obligation or obligations shall be satisfied wholly from his or her separate property, and the party incurring such obligation shall hold the other harmless from such obligation and indemnify him or her in the event he or she is ever required to satisfy same. In consideration of such agreement Ben and Ruthie agree that any and all assets acquired through such credit transaction shall be and remain the separate property of the party obligating his or her separate property for the credit extended in acquiring or resulting in the acquisition of the assets.

ERH          BAV

3.04     If the party who did not incur an obligation or liability is found liable or is otherwise required to fully or partially satisfy, with his or her separate or community property, an obligation or a liability which is the responsibility of the other party pursuant to this Agreement, the party who did not incur the obligation shall have a lien against assets acquired in the transaction or, if none, against separate property assets of the other party adequate to fully secure the party. The lien shall be in the amount of payment from the separate or community property of the party who did not incur the obligation. Nothing contained in this Agreement and no payment or partial payment by one party of the other party's separate obligation or liability shall ever be construed to be an assumption of such separate obligation or liability by the paying party or a waiver by the paying party of that party's right to be indemnified and held harmless from any liability with respect thereto by the nonpaying party.

## ARTICLE IV

## PARTITION AND EXCHANGE

4.01     As provided by Article 16, Section 15, of the Texas Constitution and relevant sections of the Texas Family Code, **Ben** and **Ruthie** hereby partition between themselves their respective interests in what would (in absence of this Agreement) otherwise be community property acquired during their marriage, such that all of the property described in Section 2.01 of this Agreement shall automatically become the separate property of one of the parties, as provided therein, without the necessity of any further written instruments between the parties. **Ben** and **Ruthie** exchange between themselves all of the community interest of **Ben** in **Ruthie's** separate property for all of the community interest of **Ruthie** in **Ben's** separate property, whereupon the portion or interest described in Section 2.01 as **Ben's** separate property shall be and constitute the separate property and estate of **Ben** and the portion or interest described in Section 2.01 as **Ruthie's** separate property shall be and constitute the separate property and estate of **Ruthie**.

4.02     From time to time, **Ben** and **Ruthie** intend to partition equally between themselves certain of their community property funds in order to create additional separate property for each to apply toward separate expenses or investments. Each such partition of community funds shall be documented by a signed instrument similar to that attached hereto as Exhibit A. All such partitioned funds shall be the separate property of the party to whom they are transferred and shall be subject to all of the provisions of this Agreement.

## ARTICLE V

## TAXES

5.01     Notwithstanding the intent and desire of the parties to retain as wholly separate their respective separate properties as defined in 2.01, the parties acknowledge that tax savings are and may continue to be available for married couples filing joint returns. The parties agree that filing such returns and pooling their respective incomes and deductions shall not be deemed a waiver of any provisions of this Agreement and, further, that each party shall be fully responsible for his or her share of the federal, state or foreign taxes attributable to his or her separate income or property.

ERH          BAV

5.02    In any year in which **Ben** and **Ruthie** file a joint income tax return, the determination of the tax liability attributable to **Ben's** or **Ruthie's** separate property shall be made by multiplying the total tax liability for such year by a fraction, the numerator of which shall be the total gross separate property income, gain or loss of a party that is includable in the return for that year less deductions and expenses reasonably attributable to such separate property income, and the denominator of which shall be the total taxable income, gain or loss shown in such return. If the total taxable income shown to be due is less than zero, the tax liability attributable to the party's separate property shall be zero. Tax credits and specially assessed tax liabilities not determined on the basis of taxable income shall be allocated to the party whose income generated such credits or taxes. **Ben** and **Ruthie** recognize that the apportionment of items of income, gain or loss, and expense will frequently require the exercise of subjective judgment, and both parties, if unable to agree between themselves, agree to abide by the good faith judgment of their tax return preparer or tax counsel concerning the proper allocation of such tax burden. Income tax liability attributable to items of income and expense that cannot reasonably be allocated shall constitute the joint liability of **Ben** and **Ruthie** to be discharged from available community property.

5.03    If, in complying with the provisions of this Agreement regarding the preservation of the separate property, as defined herein, of either party, the other party is determined by the Internal Revenue Service to be a "donor" and is assessed an associated gift tax, then the party deemed to be the "donee" in such instance shall indemnify the other party for the full amount of such tax. In such event the "donee" shall cause his attorneys and/or accountants to annually estimate the dollar amount of each annual transfer which would be deemed a "gift," and an adjustment in the amount of such property to be transferred will be made to allow the "donor" to retain property of a value sufficient to pay gift taxes. The "donee" party shall remain responsible for indemnifying the "donor" party or his estate for such taxes.

5.04    Each party hereby indemnifies and holds harmless the other party for his or her proportionate share of tax liability, including penalties and interest, as determined by this Section. If one party fails to abide by the provisions of this Section, the other party shall have a claim for reimbursement against the defaulting party or his or her separate property. The reimbursement shall include costs of suit, including reasonable attorney's fees incurred in the prosecution of the claim.

## ARTICLE VI

## HOUSEHOLD AND PERSONAL EXPENDITURES

6.01    The parties agree to maintain a joint bank account which shall be used for household and personal expenditures, as described below. The funds from time to time included in this account are agreed to be community property, and all property and all the revenues accruing from such property shall likewise be the community property of this marriage. Such community funds shall be used for day-to-day living expenses, such as food, clothing, medicine, transportation, entertainment and travel or as the parties may otherwise agree. Such expenses are considered to be the community obligations of this marriage, but to the extent such community funds are inadequate for such purposes, such expenses shall be paid as the parties shall from time to time agree. In either event, unless **Ben** and **Ruthie** agree in writing otherwise, such expenses shall be considered to have been paid from the community income of the parties, regardless of the actual source of the funds. The parties further agree that each such joint account shall be created as a survivorship account, the

ERH          BAV

ownership of which will pass entirely to the surviving spouse upon the death of the other during the parties' marriage.

## ARTICLE VII

## OWNERSHIP AND MAINTENANCE OF RESIDENCE

7.01　The property located at 1025 Hwy. 259 South, Henderson, Rusk County, Texas, which is owned by **Ruthie** as her separate property, will be the home of **Ben** and **Ruthie** after their marriage, but will continue to be the separate property of **Ruthie**. Notwithstanding the provisions of Section III, **Ben** and **Ruthie** agree that all expenses related to ownership and maintenance of the home, including but not limited to mortgage payments, and insurance, shall be community obligations to be paid from available community property. Any ad valorem taxes will be the responsibility of **Ruthie**. **Ben** hereby waives any right of reimbursement due to these payments.

7.02　Each party expressly waives and agrees not to assert any homestead rights with respect to any residence owned by the other party as his or her separate property.

## ARTICLE VIII

## SPOUSAL SUPPORT DURING MARRIAGE

8.01　Neither spouse has a duty to support the other spouse during or after their marriage.

## ARTICLE IX

## NO DUTY TO SUPPORT SPOUSE'S CHILD

9.01　**Ben** and **Ruthie** agree that during their marriage and upon the termination of their marriage for any cause, **Ruthie** is under no duty or obligation to provide a home or support for the care and maintenance of the minor or incompetent children of **Ben** by a prior marriage, and **Ben** is under no duty or obligation to provide a home or support for the care and maintenance of the minor or incompetent children of **Ruthie** by a prior marriage, regardless of the ages of the children either at the time of the parties' marriage or at the time of the termination of their marriage.

## ARTICLE X

## INTERVIVOS GIFTS

10.01　Each party retains the right to make gifts of his or her separate property without regard to blood or other relationship of the donee party. Each party further agrees that, conditional upon any such gift being made from separate property and upon giving prior notice of such gift to the other party, each may deem the other as the "donor" of one-half of said gift for federal tax purposes to the extent of the amount of the federal gift tax annual exclusion available to the other with respect to such gift.

RRH　　RAV

# ARTICLE XI

## DISSOLUTION OF MARRIAGE BY DIVORCE OR ANNULMENT

11.01  In the event the parties' marriage is dissolved by divorce or annulment by any court, wherever located, each party shall receive one-half of the parties' community property and shall retain his or her own separate property following the dissolution. To effectuate this provision, **Ben** and **Ruthie** relinquish and disclaim any right they may have to seek a division of their property other than in accordance with this paragraph, and agree to indemnify the other for the value of any property that may be awarded by a court in excess of the value that would result if division were in accordance with this paragraph.

# ARTICLE XII

## SPOUSAL SUPPORT UPON DIVORCE

12.01  Neither party has a duty to support the other spouse should the marriage end in divorce.

# ARTICLE XIII

## DISSOLUTION OF MARRIAGE BY DEATH

13.01  If this marriage is dissolved by reason of the death of either party, the surviving party shall not assert any claim to the deceased party's property including, but not limited to any homestead rights, except such property as may have been bequeathed or devised to the survivor by the deceased or inherited by the survivor in the event of the intestacy of the deceased.

13.02  **Ben** and **Ruthie** acknowledge and agree that, except as specifically provided in this Agreement, there is no contract or agreement between them that either shall give, devise or bequeath any additional property to the other. Subject to the terms of this Agreement, both **Ben** and **Ruthie** shall have the right to dispose of their respective interests in separate and community property as they wish. However, nothing in this Agreement shall be deemed to constitute a waiver or renunciation by either party of any bequest or devise that may be left to him or her by any will, codicil or trust of the other or of any designation of either as beneficiary of the other under any contract, including insurance policies and employee benefit plans. The parties agree that if **Ruthie** predeceases **Ben**, then **Ben** shall have the right to remain living in the residence for a period of six months after **Ruthie's** death. **Ben** shall be responsible for all expenses, taxes, and insurance regarding the residence during this period.

ERH    BAV

# ARTICLE XIV

## MUTUAL RELEASE OF MARITAL RIGHTS

14.01   **Ben** and **Ruthie** mutually agree that except as otherwise specifically provided in this Agreement, each waives, discharges and releases any and all rights, claims and interests that he or she may acquire in the separate property of the other as incidents of their marriage. The claims and rights that are waived and released under this Section specifically include but are not limited to the following:

(a)   The right to a family allowance.

(b)   The right to a probate homestead.

(c)   The right of election to take against the will of the other.

(d)   The right to a distributive share in the estate of the other should he or she die intestate.

(e)   The right to declare a homestead in the separate property of the other.

(f)   The right to act as administrator or executor of the estate of the other.

The provisions of this Section do not apply to property that constitutes the community property of the parties under the laws of the State of Texas.

14.02   Nothing in this Agreement shall be deemed to constitute a waiver or renunciation by either party of any bequest or devise that may be left to him or her by any Will, Codicil or trust of the other or of any designation of either as beneficiary of the other under any contract, including insurance policies and employee benefit plans.

# ARTICLE XV

## SPOUSAL SUPPORT UPON DEATH

15.01   Neither spouse has a duty to support the other spouse after the death of one of the spouses.

# ARTICLE XVI

## GENERAL PROVISIONS

16.01   It is understood by the parties that they shall execute this Agreement prior to their marriage and that it shall subsist until their marriage is dissolved. This Agreement shall be without binding force until the marriage contemplated by the parties has been solemnized or otherwise becomes legally recognizable.

Agreement in Contemplation of Marriage - Page 9

ERH          BAV

16.02   This Agreement has been negotiated by and between the parties and their attorneys for a period of time, notwithstanding that the parties' execution of the Agreement is in close proximity to the date of their contemplated marriage. As such, each party acknowledges that neither was compelled nor rushed to sign the Agreement, and accordingly, the date of the execution of the Agreement shall be of no moment in the event its validity is challenged in whole or in part.

16.03   Each party shall cooperate fully with the other in performing such acts and deeds in executing, acknowledging and delivering any such instruments or documents required to accomplish the intent of this Agreement.

16.04   All attached schedules and exhibits are hereby incorporated into this Agreement as though fully set forth verbatim at the respective point of reference to each.

16.05   The parties agree that if any provision or provisions of this Agreement shall be held to be invalid for any reason, the other provisions of the Agreement shall nevertheless remain in full force and effect.

16.06   The parties agree that any property held prior to marriage in the individual name of either party to this Agreement shall be presumed to be the separate property of that party and that any property or liability inadvertently excluded from the schedules attached hereto shall be the separate property or liability of the party to whom it belongs.

16.07   The parties agree that this instrument may be enforced by suit in law or equity by either of the parties, their heirs, executors, attorneys or assigns. Both parties agree that the defense of interspousal immunity will not be asserted or claimed.

16.08   The parties agree that this contract shall be performed in Rusk County, Texas and shall be governed by and construed in accordance with the laws of the State of Texas. The parties further agree that any and all litigation and claims which may result from disputes concerning this Agreement shall be filed in the court of proper jurisdiction in Rusk County, Texas.

16.09   This Agreement shall inure to the benefit of and be binding upon the heirs, legal representatives and assigns of the parties hereof.

16.10   Each party to this Agreement acknowledges and declares that he or she, respectively:

(a)      is fully and completely informed as to the facts relating to the subject matter of this Agreement and as to the rights and liabilities of both parties;

(b)      enters into this Agreement voluntarily after receiving advice of independent counsel;

(c)      has been provided a fair and reasonable disclosure of the property and financial obligations of the other and has voluntarily waived any right to disclosure beyond the disclosure provided;

---

Agreement in Contemplation of Marriage - Page 10                    ERH          BAV

(d)     has given careful and mature thought to the making of this Agreement;

(e)     has carefully read each provision of this Agreement; and

(f)     fully and completely understands each provision of this Agreement, both as to the subject matter and legal effect.

16.11   If either party shall bring an action or other proceeding to enforce this Agreement or to enforce any judgment, decree or order made by a court in connection with this Agreement, the prevailing party shall be entitled to reasonable attorney's fees and other necessary costs from the other party.

16.12   The waiver by one party of any breach of any provision of this Agreement by the other party shall not be deemed a waiver of the same or of any other provision of this Agreement.

16.13   This Agreement may be amended, modified or revoked only by a written instrument signed by both parties. The parties expressly reserve the rights to amend, modify, or revoke this Agreement in form or in substance by their mutual written agreement at any time during their marriage.

16.14   This Agreement in Contemplation of Marriage supersedes any and all other prenuptial agreements, either oral or written, between the parties relating to the property of the parties subsequent to the marriage.

16.15   The parties agree that this Agreement may be enforced by suit in law or equity during their marriage or by action of any court if suit for dissolution of the marriage is commenced. Both parties agree that if suit is brought that the defense of interspousal immunity will not be asserted or claimed.

16.16   **Ben** and **Ruthie** agree that they will enter into and execute the Ratification of Agreement in Contemplation of Marriage ("Ratification Agreement") attached hereto as Exhibit B within sixty days following their marriage. Notwithstanding the foregoing, all provisions of this Agreement shall be effective despite any failure of **Ben** or **Ruthie** to enter into the Ratification Agreement after marriage.



ERH          BAV

EACH PARTY TO THIS AGREEMENT UNDERSTANDS THAT BY SIGNING THIS DOCUMENT, HE OR SHE PERMANENTLY SURRENDERS CLAIMS HE OR SHE WOULD OTHERWISE HAVE HAD UNDER TEXAS LAW, INCLUDING, BUT NOT LIMITED TO, CLAIMS TO INCOME OR PROPERTY DERIVED FROM THE SEPARATE PROPERTY OF HIS OR HER SPOUSE.

AGREED:

_____
Ben Andrew Vinson

_____
Emma Ruth Hughes

ERH        BAV

## CERTIFICATES OF ATTORNEYS

I certify that I am an attorney at law, duly licensed and admitted to practice in the State of Texas and that I have been employed by **Ben Andrew Vinson** to advise him with respect to this Agreement. I have explained to him the meaning and legal effects of this Agreement. **Ben Andrew Vinson** has acknowledged to me and to **Emma Ruth Hughes** his full and complete understanding of this Agreement and its legal consequences and has freely and voluntarily executed this Agreement.

J. Paul Nelson
Attorney for Ben Andrew Vinson
State Bar # 148 99250

I certify that I am an attorney at law, duly licensed and admitted to practice in the State of Texas and that I have been employed by **Emma Ruth Hughes** to advise her with respect to this Agreement. I have explained to her the meaning and legal effects of this Agreement. **Emma Ruth Hughes** has acknowledged to me and to **Ben Andrew Vinson** her full and complete understanding of this Agreement and its legal consequences and has freely and voluntarily executed this Agreement.

Wesley A. Goenawein, Jr.
Attorney for Emma Ruth Hughes
State Bar #08059280

ERH          BAV

THE STATE OF TEXAS      §
     §
     §
COUNTY OF RUSK      §

BEFORE ME, the undersigned, a Notary Public in and for said County and State, on this day personally appeared **Ben Andrew Vinson**, known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that he executed the same for the purposes and consideration therein expressed. **Ben Andrew Vinson** also swore, under oath, that the statements of his intent and understanding contained in the Agreement are true.

GIVEN UNDER MY HAND AND SEAL OF OFFICE this the _February 10th_ day of _____, 1999.

_Glenda K. Nelson_
Notary Public in and for the State of Texas
My commission expires: _3-22-2001_

GLENDA K. NELSON
Notary Public, State of Texas
My Commission Expires March 22, 2001

THE STATE OF TEXAS      §
     §
     §
COUNTY OF RUSK      §

BEFORE ME, the undersigned, a Notary Public in and for said County and State, on this day personally appeared **Emma Ruth Hughes**, known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that she executed the same for the purposes and consideration therein expressed. **Emma Ruth Hughes** also swore, under oath, that the statements of her intent and understanding contained in the Agreement are true.

GIVEN UNDER MY HAND AND SEAL OF OFFICE this the _10th_ day of _February_, 1999.

_Glenda K. Nelson_
Notary Public in and for the State of Texas
My commission expires: _3-22-2001_

GLENDA K. NELSON
Notary Public, State of Texas
My Commission Expires March 22, 2001

Agreement in Contemplation of Marriage - Page 14

_ERH_      _BAV_
ERH          BAV

# SCHEDULE A

## Assets of Ben Andrew Vinson

| | Description of Asset | Amount |
|---|---|---|
| 1. | Rental Property at 200 E. Collins. | $35,000.00 |
| 2. | Rental Property at 1603 Timothy. | $120,000.00 |
| 3. | 1988 Jeep Cherokee. | $2,500.00 |
| 4. | 1994 Pontiac Grand Am. | $6,000.00 |
| 5. | CNB 401K Plan (estimate - final figures available in March 1999). | $234,424.00 |
| 6. | Fidelity IRA. | $13,716.00 |
| 7. | Franklin Templeton IRA. | $5,468.00 |
| | **Total Assets** | **$417,108.00** |

_Ben Andrey Vinson_
_____
Ben Andrew Vinson

_Emma Ruth Hughes_
_____
Emma Ruth Hughes

## SCHEDULE B

## Assets of Emma Ruth Hughes

| | Description of Asset | Amount |
|---|---|---|
| 1. | 1025 Highway 259 S., Henderson, Texas. Approximately 40 acres. | $450,000.00 |
| 2. | 20 acres - Laneville, Texas.<br>20 acres out of Tract One as filed in Volume 1634, Page 436<br>Land Records of Rusk County. | $20,000.00 |
| 3. | 1% General Partnership Interest and 49% Limited Partnership Interest<br>in LSD Ranch Partners, Ltd. The other 50% interest is owned by<br>the R. Copper Hughes Family Trust. | $657,474.00 |
| 4. | 1998 Ford Expedition. | $34,000.00 |
| 5. | John Deere Tractor Model 2150. | $15,000.00 |
| 6. | Polaris Four Wheeler. | $3,000.00 |
| 7. | Household goods, furnishings, clothing, and jewelry. | $60,000.00 |
| 8. | Primevest Account #40392379. | $427,719.00 |
| 9. | Citizens National Bank, Henderson, Texas. Checking Account. | $7,500.00 |
| | **Total Assets** | **$1,674,693.00** |

_____
Ben Andrew Vinson

_____
Emma Ruth Hughes

# SCHEDULE C

## Liabilities of Ben Andrew Vinson

| Description of Liabilities | Amount |
|---|---|
| 1. Rental Property at 200 E. Collins. | $31,285.00 |
| 2. Rental Property at 1603 Timothy. | $72,544.00 |
| 3. MBNA Mastercard. | $4,500.00 |
| **Total Liabilities** | $108,329.00 |

_Ben Andrew Vinson_
Ben Andrew Vinson

_Emma Ruth Hughes_
Emma Ruth Hughes

# SCHEDULE D

## Liabilities of Emma Ruth Hughes

**Description of Liabilities**                                    **Amount**

No Liabilities.

_____
Ben Andrew Vinson

_____
Emma Ruth Hughes

# EXHIBIT A

## AGREEMENT PARTITIONING COMMUNITY PROPERTY

THE STATE OF TEXAS   §

                  §         KNOW ALL MEN BY THESE PRESENTS:

COUNTY OF RUSK      §

WHEREAS, **Ben Andrew Vinson** and **Emma Ruth Hughes**, husband and wife, of Rusk County, Texas, own certain sums of money as community property in the amount hereinafter specified;

WHEREAS, each spouse desires, pursuant to Sections 5.52 and 5.53 of the Texas Family Code and Article XVI, Section 15, of the Texas Constitution, to partition that community property in order that each spouse shall hereinafter hold and possess his or her share as his or her sole and separate property, without intent to defraud the rights of preexisting creditors;

WHEREAS, the parties describe the community property to be partitioned by this Agreement as cash in the amount of $_____;

NOW, THEREFORE, the spouses covenant and agree that a partition of the hereinbefore described property be made as follows:

1.     **Emma Ruth Hughes**, the wife, shall hold and possess, as her sole and separate property, cash in the amount of $_½ Sum_____ and **Ben Andrew Vinson** does grant, release and confirm unto **Emma Ruth Hughes** and to her heirs and assigns all right, title and interest in such property, together with all income, property or increase in kind or value hereafter arising from such property, to have and to hold the same, with all and singular, the hereditaments and appurtenances thereto belonging forever.

2.     **Ben Andrew Vinson**, the husband, shall hold and possess, as his sole and separate property, cash in the amount of $_½ Sum_____ and **Emma Ruth Hughes** does grant, release and confirm unto **Ben Andrew Vinson** and to his heirs and assigns all right, title and interest in such property, together with all income, property or increase in kind or value hereafter arising from such property, to have and to hold the same, with all and singular, the hereditaments and appurtenances thereto belonging forever.

The parties to this Agreement have consulted with their attorney concerning the terms of this Agreement and each party has carefully read the Agreement and is completely aware, not only of its content, but also of its legal effect.

EXECUTED this the ___10th___ day of ___February___, 1999, at __Henderson__, Texas.

_____Ben Andrew Vinson_____
Ben Andrew Vinson

_____Emma Ruth Hughes_____
Emma Ruth Hughes

THE STATE OF TEXAS     §
                              §
COUNTY OF RUSK     §

BEFORE ME, the undersigned, a Notary Public in and for said County and State, on this day personally appeared Ben Andrew Vinson and Emma Ruth Hughes, his wife, both known to me to be the persons whose names are subscribed to the foregoing instrument, and acknowledged to me that they executed the same for the purposes and consideration therein expressed.

GIVEN UNDER MY HAND AND SEAL OF OFFICE this the ___10th___ day of ___February___, 1999.

_____Glenda K. Nelson_____
Notary Public in and for the State of Texas
My commission expires: _3-22-2001_



GLENDA K. NELSON
Notary Public, State of Texas
My Commission Expires March 22, 2001

# EXHIBIT B

## Ratification of Agreement in Contemplation of Marriage

**Ben Andrew Vinson** and **Emma Ruth Hughes**, having been married on _Feb. 14, 1999_ _____, hereby ratify and confirm their agreement to abide by the terms of the Agreement in Contemplation of Marriage dated _Feb. 10_, 1999. The undersigned specifically confirm as spouses that the Agreement is intended to deal with property presently owned, to partition and exchange community property to be acquired in the future, and to agree that certain income or property arising from separate property presently owned or hereafter acquired shall be the separate property of the owner thereof.

**Dated this** _9th_ **day of** _March_ , 19 _99_ .


_____
**Ben Andrew Vinson, Husband**

_____
**Emma Ruth Hughes, Wife**


**AGREED AS TO FORM:**

_____
#14899250
**Attorney for Ben Andrew Vinson**

_____
Wesley A. Goenawein, Jr.
**Attorney for Emma Ruth Hughes**

# EXHIBIT B

Final Decree of Divorce

NOTICE: THIS DOCUMENT CONTAINS SENSITIVE DATA

Cause No. 2011-12-590-CCL

| | | |
|---|---|---|
| IN THE MATTER OF | § | IN THE COUNTY COURT |
| THE MARRIAGE OF | § | AT LAW |
| | § | |
| EMMA RUTH VINSON | § | IN AND FOR |
| BEN ANDREW VINSON, SR. | § | RUSK COUNTY, TEXAS |

## *Final Decree of Divorce*

On August 13, 2014, the Court heard this case.

*Appearances*

Petitioner, Emma Ruth Vinson, appeared in person and through attorney of record,

Robert R. Foster, and announced ready for trial.

Respondent, Ben Andrew Vinson, Sr., appeared in person and through attorney of record,

Joe Shumate, and announced ready for trial.

*Record*

The record of testimony was duly reported by Terri Boling, the court reporter for the 4th

Judicial District Court of Rusk County, Texas.

*Jurisdiction and Domicile*

The Court finds that the pleadings of Petitioner are in due form and contain all the

allegations, information, and prerequisites required by law. The Court, after receiving evidence,

finds that it has jurisdiction of this case and of all the parties and that at least sixty days have

elapsed since the date the suit was filed.

The Court further finds that, at the time this suit was filed, Petitioner had been a

domiciliary of Texas for the preceding six-month period and a resident of the county in which

*Vol. 4046 Page 524*

this suit was filed for the preceding ninety-day period. All persons entitled to citation were properly cited.

*Jury*

A jury was waived, and questions of fact and of law were submitted to the Court.

*Divorce*

IT IS ORDERED AND DECREED that Emma Ruth Vinson, Petitioner, and Ben Andrew Vinson, Sr., Respondent, are divorced and that the marriage between them is dissolved.

*Children of the Marriage*

The Court finds that there is no child of the marriage of Petitioner and Respondent and that none is expected.

*Division of Marital Estate*

The Court finds that the following is a just and right division of the parties' marital estate, having due regard for the rights of each party.

IT IS ORDERED AND DECREED that the husband, Ben Andrew Vinson, Sr., is awarded the following as his sole and separate property, and the wife is divested of all right, title, interest, and claim in and to that property:

H-1.    All household furniture, furnishings, fixtures, goods, art objects, collectibles, appliances, and equipment in the possession of the husband or subject to his sole control.

H-2.    The following furniture, furnishings, fixtures, goods, art objects, collectibles, appliances, and equipment in the present possession of wife:

> a) classical CD's
> b) antique chifforobe
> c) 9mm Smith & Wesson pistol
> d) 2 hunting knives (if found)
> e) welding machine
> f) utility sprayer
> g) wide screen television

*Vol. 404 Page 525*

H-3.    All clothing, jewelry, and other personal effects in the possession of the husband or subject to his sole control.

H-4.    All funds on deposit, together with accrued but unpaid interest, in the following banks, savings institutions, or other financial institutions:

      a)  Henderson Federal Savings account ending in 3065
      b)  Texas Bank account ending in 3429

H-7.    A portion of Ben Andrew Vinson, Sr.'s retirement benefits in the Texas Bank 401k Plan arising out of Ben Andrew Vinson, Sr.'s employment with Texas Bank as of the date that the Final Decree of Divorce is signed by the Court, that portion being FIFTY PERCENT (50%) of the amount remaining in the account after deduction of the amount owned by Ben Andrew Vinson, Sr.'s separate estate ($234,000.00), together with any interest, dividends, gains, or losses on the amount awarded to husband arising since that date and more particularly defined in a Qualified Domestic Relations Order signed by the Court on the day this Final Decree of Divorce is signed.

H-8.    All policies of life insurance (including cash values) insuring the husband's life.

H-9.    The following motor vehicles, together with all prepaid insurance, keys, and title documents:

      a)  1998 Toyota Camry
      b)  1996 Toyota Camry

H-10.   The timeshare in , Garland County Arkansas, more particularly described as Hot Springs Coopershares, contract number 32300.

IT IS ORDERED AND DECREED that the wife, Emma Ruth Vinson, is awarded the

following as her sole and separate property, and the husband is divested of all right, title, interest,

and claim in and to that property:

W-1.    All household furniture, furnishings, fixtures, goods, art objects, collectibles, appliances, and equipment in the possession of the wife or subject to her sole control, save and except for those items expressly awarded to husband in paragraph H-2 above.

W-2.    All clothing, jewelry, and other personal effects in the possession of the wife or subject to her sole control.

W-3.    All funds on deposit, together with accrued but unpaid interest, in the following banks, savings institutions, or other financial institutions:

      a)  CNB checking account ending in 6235

*Vol. 4048  Page 526*

W-4.    All sums, whether matured or unmatured, accrued or unaccrued, vested or otherwise, together with all increases thereof, the proceeds therefrom, and any other rights related to any profit-sharing plan, retirement plan, Keogh plan, pension plan, employee stock option plan, 401(k) plan, employee savings plan, accrued unpaid bonuses, disability plan, or other benefits existing by reason of the wife's past, present, or future employment, including but not limited to:  wife's retirement benefits with Teacher Retirement System of Texas.

W-5.    A portion of Ben Andrew Vinson, Sr.'s retirement benefits in the Texas Bank 401k Plan arising out of Ben Andrew Vinson, Sr.'s employment with Texas Bank as of the date that the Final Decree of Divorce is signed by the Court, that portion being FIFTY PERCENT (50%) of the amount remaining in the account after deduction of the amount owned by Ben Andrew Vinson, Sr.'s separate estate ($234,000.00), together with any interest, dividends, gains, or losses on the amount awarded to wife arising since that date and more particularly defined in a Qualified Domestic Relations Order signed by the Court on the day this Final Decree of Divorce is signed.

W-6.    All policies of life insurance (including cash values) insuring the wife's life.

W-7.    The time share in Osceola County, Florida, more particularly described as Vacation Village at Parkway, contract number 127078.

IT IS ORDERED AND DECREED that the husband, Ben Andrew Vinson, Sr., shall pay, as a part of the division of the estate of the parties, and shall indemnify and hold the wife and her property harmless from any failure to so discharge, these items:

H-1.    The following debts, charges, liabilities, and obligations:

> a)  One-half (1/2) of the fee charged by the plan administrator for the review and other services provided to effectuate the division of the Texas Bank 401k Plan as provided herein.

H-2.    All debts, charges, liabilities, and other obligations incurred solely by the husband from and after December 15, 2011, unless express provision is made in this decree to the contrary.

H-3.    All encumbrances, ad valorem taxes, liens, assessments, or other charges due or to become due on the real and personal property awarded to the husband in this decree unless express provision is made in this decree to the contrary.

IT IS ORDERED AND DECREED that the wife, Emma Ruth Vinson, shall pay, as a part of the division of the estate of the parties, and shall indemnify and hold the husband and his property harmless from any failure to so discharge, these items:

*Vol. 4049  Page 527*

W-1. The following debts, charges, liabilities, and obligations:

        a) One-half (1/2) of the fee charged by the plan administrator for the review and other services provided to effectuate the division of the Texas Bank 401k Plan as provided herein.

W-2. All debts, charges, liabilities, and other obligations incurred solely by the wife from and after December 15, 2011, unless express provision is made in this decree to the contrary.

W-3. All encumbrances, ad valorem taxes, liens, assessments, or other charges due or to become due on the real and personal property awarded to the wife in this decree unless express provision is made in this decree to the contrary.

IT IS ORDERED AND DECREED that each party shall send to the other party, within three days of its receipt, a copy of any correspondence from a creditor or taxing authority concerning any potential liability of the other party.

*Income Taxes*

The Court finds that Respondent, Ben Andrew Vinson, Sr., agrees to accept sole responsibility for the payment of all taxes, deficiencies, assessments, penalties, or interest due thereon all federal income tax liabilities associated with the income reported on the 2013 Form 1099-R issued in his name by American Funds. IT IS THEREFORE ORDERED that Ben Andrew Vinson, Sr., shall be solely responsible for all federal income tax liabilities of the parties arising out or of connected with the income reported on the 2013 Form 1099-R issued to husband by American Funds and he shall timely pay any deficiencies, assessments, penalties, or interest due thereon and shall indemnify and hold Emma Ruth Vinson and her property harmless.

The Court finds that the parties have lived apart at all times during the calendar years of 2012, 2013, and 2014, that the parties have earned income that is community income during that calendar year, and that there have been no transfers of earned income between them from January 1, 2012, through the date of divorce. IT IS ORDERED AND DECREED that each party

Vol. 4084    Page 528

file an individual income tax return in accordance with Internal Revenue Code sections 66(a) and 879(a) for each of those years.

IT IS ORDERED AND DECREED that the parties' income shall be reported and allocated in accordance with the Internal Revenue Code. IT IS ORDERED AND DECREED that each party shall be solely liable for the tax liability shown on his or her return and shall timely pay and hold the other party and his or her property harmless from any liability of the reporting party for federal income taxes for calendar years 2012, 2013, and 2014.

IT IS ORDERED AND DECREED that each party shall use as a credit against his or her tax liability for those years all estimated tax payments and wage/salary withholding made by him or her.

IT IS ORDERED AND DECREED that for calendar years 2012, 2013, and 2014, each party shall indemnify and hold the other party and his or her property harmless from any tax liability associated with the reporting party's individual tax return for those years unless the parties have agreed to allocate their tax liability in a manner different from that reflected on their returns.

IT IS ORDERED AND DECREED that each party shall furnish such information to the other party as is requested to prepare federal income tax returns for 2014 within thirty days of receipt of a written request for the information, and in no event shall the available information be exchanged later than March 1, 2015. As requested information becomes available after that date, it shall be provided within ten days of receipt.

IT IS ORDERED AND DECREED that each party shall pay for the preparation of his or her return for 2012, 2013, and 2014.

*Vol. 4034 Page 529*

IT IS ORDERED AND DECREED that each party shall preserve for a period of seven years from the date of divorce all financial records relating to the community estate. Each party is ORDERED to allow the other party access to these records to determine acquisition dates or tax basis or to respond to an IRS examination within five days of receipt of written notice from the other party. Access shall include the right to copy the records.

IT IS ORDERED AND DECREED that all payments made to the other party in accordance with the allocation provisions for payment of federal income taxes contained in this Final Decree of Divorce are not deemed income to the party receiving those payments but are part of the property division and necessary for a just and right division of the parties' estate.

*Division of Assets and Liabilities Not Divided in Decree*

IT IS ORDERED AND DECREED that any assets of the parties not awarded or divided by this Final Decree of Divorce are subject to future division as provided in the Texas Family Code.

IT IS FURTHER ORDERED AND DECREED, as a part of the division of the estate of the parties, that any community liability not expressly assumed by a party under this decree is to be paid by the party incurring the liability, and the party incurring the liability shall indemnify and hold the other party and his or her property harmless from any failure to so discharge the liability.

*Confirmation of Separate Property*

IT IS ORDERED AND DECREED that the following described property is confirmed as the separate property of husband, Ben Andrew Vinson, Sr.:

H-1. _All funds on deposit, together with accrued but unpaid interest, in the following banks, savings institutions, or other financial institutions:

*Vol. 4084 Page 530*

a) Raymond James IRA account ending in 8277

H-2.  The 1988 Jeep Cherokee motor vehicle, together with all prepaid insurance, keys, and title documents.

H-3.  The recliner in the possession of wife.

H-4.  The following debts, charges, and liabilities:

    a) Bank of America NASCAR credit account ending in 4896 in husband's name
    b) Bank of America World Points credit account ending in 6921 in husband's name
    c) TCM Bank credit account ending in 1261 in husband's name
    d) Gander Mountain credit account ending in 7242 in husband's name
    e) Texas Bank loan in husband name in the approximate sum of $10,749.00
    f) Nelnet loan in husband's name in the approximate sum of $6,624.00

H-5.  The sum of total sum of $234,000.00 in Ben Andrew Vinson, Sr.'s retirement benefits in the Texas Bank 401k Plan arising out of Ben Andrew Vinson, Sr.'s employment with Texas Bank as of the date that the Final Decree of Divorce is signed by the Court.

IT IS ORDERED AND DECREED that the following described property is confirmed as the separate property of wife, Emma Ruth Vinson:

W-1. The real property and improvements more commonly known as 1025 Highway 259 South, Henderson, Rusk County, Texas, with approximately 40 acres, including but not limited to any escrow funds, prepaid insurance, utility deposits, keys, house plans, home security access and code, garage door opener, warranties and service contracts, and title and closing documents.

W-2.  The following motor vehicles, together with all prepaid insurance, keys, and title documents:

    a) John Deere tractor model 2150
    b) Polaris four-wheeler
    c) 1990 Chevrolet K1500 farm truck
    d) 2010 Saturn Outlook, VIN 5GZLRVED9AG200431
    e) 1997 Lexus
    f) John Deere riding mower
    g) Goose neck trailer
    h) Finishing mower – PTO
    i) Bush hog
    j) Green Chevrolet 4WD farm truck

Vol. 4834 Page 531

k) Tiller
l) Golf cart
m) Blue utility trailer

W-3.   All funds on deposit, together with accrued but unpaid interest, in the following banks, savings institutions, or other financial institutions:

a) Citizens National Bank account ending in 9669
b) Citizens National Bank account ending in 3257
c) Raymond James investment account ending in 3804
d) Raymond James investment account ending in 5513

W-4.   All sums, whether matured or unmatured, accrued or unaccrued, vested or otherwise, together with all increases thereof, the proceeds therefrom, and any other rights related to any profit-sharing plan, retirement plan, Keogh plan, pension plan, employee stock option plan, 401(k) plan, employee savings plan, accrued unpaid bonuses, disability plan, or other benefits existing by reason of the wife's past, present, or future employment, including but not limited to: wife's retirement benefits with Louisiana State Employees' Retirement System.

W-5.   100% of the 1% General Partner Interest and 49% Limited Partner Interest in LSD Ranch Partners, Ltd.

W-6.   Various household furnishings, furniture, fixtures, jewelry and personal effects, farm implements, farm equipment and trailers, antiques, appliances, electronics, tools, equipment, firearms, and decorations currently in the possession of wife.

W-7.   The following debts, charges, and liabilities:

a) Citizens National Bank credit account ending in 0549 in the name of wife

b) Citizens National Bank installment loan ending in 0264 in the name of wife

*No Alimony*

IT IS ORDERED AND DECREED that no provision of this decree shall be construed as alimony under the Internal Revenue Code, except as this decree expressly provides for payment of maintenance or alimony under the Internal Revenue Code.

Vol. 4404 Page 532

*Decree to Serve as Muniment of Title*

This decree shall serve as a muniment of title to transfer ownership of all property awarded to any party in this Final Decree of Divorce.

*Change of Name*

IT IS ORDERED AND DECREED that Petitioner's name is changed to Emma Ruth Houston Hughes.

*Attorney's Fees and Court Costs*

IT IS ORDERED AND DECREED that attorney's fees and costs of court are to be borne by the party who incurred them.

*Resolution of Temporary Orders*

IT IS ORDERED AND DECREED that Petitioner and Respondent are discharged from all further liabilities and obligations imposed by the temporary order previously rendered by this Court.

IT IS FURTHER ORDERED that Petitioner may remove Respondent as a beneficiary from her dental insurance policy through her employer effective August 13, 2014.

*Discharge from Discovery Retention Requirement*

IT IS ORDERED AND DECREED that any persons required to serve discovery materials shall maintain, for a period of three months after this judgment is signed, the originals or exact copies of all discovery materials produced during the pendency of this matter and not filed with the Court. If an appeal is begun within that three-month period, IT IS FURTHER ORDERED AND DECREED that the discovery materials shall be maintained while the appeal is pending.

Vol. 4854    Page 533

*Execute Language*

IT IS ORDERED that Petitioner and Respondent shall execute all instruments necessary to effect this decree and that Petitioner and Respondent have all appropriate and necessary writs, execution and process, as many and as often as is necessary to accomplish the execution and final disposition of this decree.

*Clarifying Orders*

Without affecting the finality of this Final Decree of Divorce, this Court expressly reserves the right to make orders necessary to clarify and enforce this decree.

*Relief Not Granted*

IT IS ORDERED AND DECREED that all relief requested in this case and not expressly granted is denied. This is a final judgment, for which let execution and all writs and processes necessary to enforce this judgment issue. This judgment finally disposes of all claims and all parties and is appealable.

SIGNED on this the 14 day of October, 2014.

_Robin D Sage_
Honorable Judge Robin D. Sage,
Sitting by Assignment in the County Court
at Law of Rusk County, Texas

APPROVED AS TO FORM ONLY:


Robert R. Foster,
Attorney for Emma Ruth Vinson
Texas Bar No. 07295200

Joe Shumate,
Attorney for Ben Andrew Vinson, Sr.
Texas Bar No. 18327500

*Vol. 4804    Page 534*

# Tex. Const. art. XVI, § 15

§ 15. Separate and community property of husband and wife

All property, both real and personal, of a spouse owned or claimed before marriage, and that acquired afterward by gift, devise or descent, shall be the separate property of that spouse; and laws shall be passed more clearly defining the rights of the spouses, in relation to separate and community property; provided that persons about to marry and spouses, without the intention to defraud pre-existing creditors, may by written instrument from time to time partition between themselves all or part of their property, then existing or to be acquired, or exchange between themselves the community interest of one spouse or future spouse in any property for the community interest of the other spouse or future spouse in other community property then existing or to be acquired, whereupon the portion or interest set aside to each spouse shall be and constitute a part of the separate property and estate of such spouse or future spouse; spouses also may from time to time, by written instrument, agree between themselves that the income or property from all or part of the separate property then owned or which thereafter might be acquired by only one of them, shall be the separate property of that spouse; if one spouse makes a gift of property to the other that gift is presumed to include all the income or property which might arise from that gift of property; spouses may agree in writing that all or part of their community property becomes the property of the surviving spouse on the death of a spouse; and spouses may agree in writing that all or part of the separate property owned by either or both of them shall be the spouses' community property.

# Tex. Fam. Code § 3.001

## § 3.001. Separate Property

A spouse's separate property consists of:

(1) the property owned or claimed by the spouse before marriage;

(2) the property acquired by the spouse during marriage by gift, devise, or descent; and

(3) the recovery for personal injuries sustained by the spouse during marriage, except any recovery for loss of earning capacity during marriage.

# Tex. Fam. Code Ann. § 4.001

## § 4.001.  Definitions

In this subchapter:

(1) "Premarital agreement" means an agreement between prospective spouses made in contemplation of marriage and to be effective on marriage.

(2) "Property" means an interest, present or future, legal or equitable, vested or contingent, in real or personal property, including income and earnings.

## § 4.003. Content

(a) The parties to a premarital agreement may contract with respect to:

(1) the rights and obligations of each of the parties in any of the property of either or both of them whenever and wherever acquired or located;

(2) the right to buy, sell, use, transfer, exchange, abandon, lease, consume, expend, assign, create a security interest in, mortgage, encumber, dispose of, or otherwise manage and control property;

(3) the disposition of property on separation, marital dissolution, death, or the occurrence or nonoccurrence of any other event;

(4) the modification or elimination of spousal support;

(5) the making of a will, trust, or other arrangement to carry out the provisions of the agreement;

(6) the ownership rights in and disposition of the death benefit from a life insurance policy;

(7) the choice of law governing the construction of the agreement; and

(8) any other matter, including their personal rights and obligations, not in violation of public policy or a statute imposing a criminal penalty.

(b) The right of a child to support may not be adversely affected by a premarital agreement.

**§ 4.004. Effect of Marriage**

A premarital agreement becomes effective on marriage.

## § 4.005. Amendment or Revocation

After marriage, a premarital agreement may be amended or revoked only by

a written agreement signed by the parties. The amended agreement or the revocation is enforceable without consideration.